**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 29 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MARGET A. SNYDER,

      Plaintiff - Appellant,

v.

CITY OF MOAB, a Utah municipal
corporation, and KARLA R. HANCOCK,
an individual and Moab City Mayor,

      Defendants - Appellees.

No. 01-4046

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:99-CV-99-C)

---

David B. Thompson, Portland, Oregon, (Christina I Miller, Park City, Utah, with him on
the briefs), for the Plaintiff - Appellant.

Benson L. Hathaway, Jr. (Aimee Martinez Thoman with him on the brief), Stirba &
Hathaway, Salt Lake City, Utah, for the Defendants - Appellees.

---

Before **BRISCOE, HOLLOWAY** and **MURPHY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

# I

This appeal is from a judgment on a jury verdict for the defendant, the City of Moab, Utah ("the City"), in an employment discrimination case where Plaintiff, Marget Snyder, was not reappointed as treasurer. Snyder was first appointed treasurer of the City of Moab, Utah in 1990 by its then mayor, Tom Stocks. In January of 1998, a new Mayor, Karla Hancock took office. Mayor Hancock had statutory authority of appointment over four positions: the chief of police, the city attorney, the public works director, and the city treasurer. Snyder, who did not support Hancock in her campaign, was the only incumbent not reappointed. The day Hancock took office she wrote Snyder a letter noting that the mayor was given the power to make appointments to positions such as city treasurer because a mayor "must be able to rely upon the loyalty and support of . . . key staff members." II Jt. App. 259 (letter dated Jan. 6, 1998 from Hancock to Snyder). The letter went on to say:

> I'm sure you and I are in agreement that your commitment was definitely not to <u>me</u> in the recent election. Because of this, I feel that it would be in <u>my</u> best interest—and the City's—to make another appointment to the Treasurer position.

*Id*. (emphasis in original).

Snyder brought an action under 42 U.S.C. § 1983 in the United States District Court in Utah against the City and against Mayor Hancock (collectively, "defendants") alleging violations of her First and Fourteenth Amendment rights.

The district court granted summary judgment for defendants on Snyder's

Fourteenth Amendment Due Process claim on the grounds that Snyder had no protected property interest in her continued employment with the City. I Jt. App. 19k-19m.[1] On the remaining First Amendment claim the district court denied both parties' motions for summary judgment, and the case proceeded to trial. *Id.* at 19i. Snyder requested, and the district court denied, a jury instruction that the jury should find in her favor if the jury thought it was a "close case." *Id.* at 236. The jury, in a special verdict, found that Snyder's lack of political support for Hancock during the mayoral election was a substantial or motivating factor in the decision not to reappoint her. It was also found that the City and Mayor Hancock had proven that the effective performance of the treasurer's job required political allegiance to the mayor. *Id.* at 237-41. Judgment was, therefore, entered for the defendants. *Id.* at 242.

## II

Snyder appeals, arguing that: 1) the district court erred in denying her motion for judgment as a matter of law or, in the alternative, denying her motion for a new trial on the issue of whether City Treasurer's office was a position for which political allegiance was required; 2) the district court committed reversible error when it refused to give her "close question" jury instruction; and 3) the district court erred in granting summary judgment for the defendants on the due process issue and erroneously holding that,

---

[1]The district court's order of Aug. 16, 2000 and its order of Jan. 17, 2001 are included in the Joint Appendix following page 19. The pages are numbered 19a-19n and 19o-19p, respectively.

because Utah state law gave the mayor of a city the size of Moab appointment power over city treasurers, Snyder had no protected property interest in her job as treasurer.

## A

## Motion for Judgment as a Matter of Law
## and Motion for a New Trial

Snyder asks us to reverse the district court's denial of her motion for a judgment as a matter of law on her First Amendment claim or, in the alternative, to grant her a new trial on this claim. We address each argument in turn and, for reasons detailed below, decline to do either.

Snyder first argues the district court erred in denying her a judgment as a matter of law on the First Amendment claim.[2] We review de novo a district court's disposition of a

---

[2]Snyder also argues that the district court erred in denying her motion for summary judgment. Appellant's Brief at 12-22. However, as we have consistently held, "the denial of a motion for summary judgment is not reviewable on an appeal following the entry of final judgment after a trial where the district court's decision on the motion was based on its determination that there were genuine issues of material fact in dispute." *Stump v. Gates*, 211 F.3d 527, 532 (10th Cir. 2000) (citing *Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1521 (10th Cir. 1997) and *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1250-51 (10th Cir. 1992)).

Here, the district court denied cross-motions for summary judgment on Snyder's First Amendment claim because of a dispute over whether political allegiance is an appropriate requirement for the position of city treasurer. Consequently, we do not review the denial of Snyder's motion for summary judgment. We do, however, reach the substance of Snyder's arguments here in our review of the district court's denial of judgment as a matter of law for Snyder. *Whalen*, 974 F.2d at 1251.

Thus where a party is denied summary judgment by the district court on grounds that there were genuine issues of material fact, the proper avenue of appeal lies in challenging the denial of a judgment of a matter of law rather then the denial of summary judgment. *See* 19 Wm. Moore et al., Moore's Federal Practice § 205.8 (3d ed. 1999) ("In most cases, denial of summary judgment is a non-appealable, interlocutory order. The federal courts are in accord that a denial of summary judgment based on a genuine dispute of material facts becomes moot and

motion for judgment as a matter of law, applying the same standard as the district court. Such a judgment is warranted only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion. We must view the evidence and any inferences to be drawn therefrom most favorably to the non-moving party. *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999).

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Mason v. Oklahoma Tpk. Auth.*, 115 F.3d 1442, 1451 (10th Cir. 1997) (citation omitted). This protection is violated, and a valid § 1983 claim may be asserted, where a public employee is discharged because of his or her position regarding a particular candidate for office except where the public employee is in a position requiring political allegiance. As the Supreme Court explained, if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved," then no First Amendment violation occurs if the employee is fired on the basis of his or her political allegiance. *Branti v. Finkel*, 445 U.S. 507, 518 (1980). Whether political association is an appropriate requirement for a position has been held to be a question of fact. However that question may be resolved as a matter of law if the facts as to the nature of the duties of the position are undisputed. *Barker v. City of Del Ray*, 215 F.3d 1134, 1138 (10th Cir. 2000). The employer—here

unreviewable after trial since the dispute as to the facts has been resolved.") (omitting footnotes); *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995).

- 5 -

the City—bears the burden of proving whether political association is an appropriate requirement for the effective performance of the public office involved. *Id.*

Determining whether political allegiance is a proper job requirement calls for an analysis of "the nature of the employee's duties and responsibilities." *Id.* (quotations omitted). An analysis of the whole picture is necessary; no one specific factor need be proven to justify a political allegiance requirement. *See McCloud v. Testa*, 97 F.3d 1536 (6th Cir. 1996) (finding no Supreme Court opinions categorically holding that political affiliation always is or is not an appropriate consideration for a particular type of position) (cited by *Barker*, 215 F.3d at 1138). As the Court noted in *Elrod v. Burns*, 427 U.S. 347, 367 (1976) (plurality opinion), "no clear line can be drawn" between positions that require political allegiance and those that do not. The Court explained:

> The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In determining whether an employee occupies a policymaking position, consideration would also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. Thus, the political loyalty justification is a matter of proof, or at least argument, directed at particular kinds of jobs.

*Id.* at 367-68 (quotation marks and citations omitted).

On appeal, Snyder argues that defendants presented no substantial evidence from which the jury could have found that her job as treasurer required political allegiance. Appellant's Brief at 25. In support of her argument, she cites certain portions of the

testimony of Mayor Hancock and the city manager as "[t]he only evidence the City presented on the subject." *Id.* (citing Jt. App. 170-72, 185-88). She characterizes this testimony as merely generalized statements about the position of treasurer that did not support a conclusion that political loyalty was an appropriate job requirement. *Id.* at 26. Specifically, Snyder notes that the testimony failed to explain what kind of confidences the treasurer was required to keep, which of the mayor's policies the treasurer was required to support, and how a lack of loyalty or nonsupport of policy might affect the treasurer's job performance. *Id.*

This lack of specifics, Snyder suggests, is dispositive because the defendants were required to identify "specific, politically sensitive policies *set by the mayor*—as opposed to policies set by the city manager or the city council in Moab, neither of whom are under the control of the mayor or necessarily aligned politically with her . . . ." Appellant's Reply Brief at 6 (emphasis in original). In support of her position Snyder cites *Barker*, 215 F.3d at 1136-38, and *Green v. Henley*, 924 F.2d 185, 187 (10th Cir. 1991). These cases, Snyder contends, require that political allegiance can properly be found as a job requirement in this case only if the City could point to specifics that show either that the treasurer was the "alter ego" or "right hand" of the mayor as in *Barker* or had the same degree of representative and policymaking functions as in *Green*.

In reply, the City cites these facts as supporting the verdict: the treasurer's supervisory power, including that of hiring and firing employees; the treasurer's

responsibility for "monitoring revenue generating functions" including fees of various kinds; the treasurer's responsibility for implementing standard accounting procedures; the treasurer's control of city monies "under the broad guidance of the Mayor and City Council;" the independence of the treasurer in the performance of her duties and the nondelegability of her responsibilities; the treasurer's authority to invest city funds; and the treasurer's obligation to determine the City's cash requirements.[3] Appellee Brief at 26.

On this record, we conclude there is a sufficient basis for the jury verdict finding political loyalty (in this case loyalty to the Mayor) "is an appropriate requirement for the effective performance of the public office involved." *Barker*, 215 F.3d at 1138. Specifically, the record contains evidence that indicates the position of city treasurer involved significant amounts of policy making.

The job description states that the city treasurer "Interacts with the public and addresses complaints and problems." Jt. App. at 15. Indeed, Snyder herself testified that the city treasurer dealt with the public and resolved citizens' problems directly, that she was "on the front line of the water, sewer and garbage bills, and so . . . [she] was constantly dealing with hostile citizens . . . ." I Jt. App. 112, 118. In so dealing, the treasurer had authority to make adjustments to these charges, and referred members of the public to other departments. *Id.* at 118. Thus, the city treasurer is a position with

---

[3]For a fuller description of the city treasurer's powers and duties, *see* I Jt. App. 15-19.

significant authority to determine how the City deals with municipal bills.

The treasurer also has significant policy making authority to set the City's monetary policy by determining the city's cash requirements and to invest funds either through the state treasurer's department or with a qualified investment company. *Id.* at 127. Further, the treasurer has significant authority to set the City's employment policy by determining, with of a panel of several officials, who to hire for the treasurer's office, including the deputy treasurer. *Id.* at 118. Finally, the record indicates the treasurer was given significant discretion to make these policy decisions. The city treasurer's job description included the statement: "The Treasurer works under the general guidance and direction of the City Manager, and the broad policy guidance of the Mayor and the City council." *Id.* at 15. Therefore, the record supports the conclusion that the position of city treasurer entails broad policy making authority and significant discretion to use that authority.

While not all policy making positions require political loyalty, *Branti*, 445 U.S. at 518, the fact that a particular position has policy making authority does support the conclusion that political loyalty is an appropriate requirement. *Elrod*, 427 U.S. at 367-68; *Dickeson v. Quarberg*, 844 F.2d 1435, 1441 (10th Cir. 1988) (noting "the question whether a policymaking or confidential relationship is involved may be relevant"). And in this case, it does just that.

We so conclude even though Mayor Hancock testified that she believed it was

inappropriate to consider "political loyalty" a requisite for employment as city treasurer.

*Id.* at 41. At trial, Mayor Hancock testified:

> Q. Well, let me make it a little bit clearer. It's inappropriate to require political loyalty to the Mayor in filling the position of treasurer; isn't that correct?
>
> A. For me it was. I can't speak for what mayors generally would feel like.
>
> Q. But you're the Mayor of Moab?
>
> A. Right.
>
> Q. And for you it was inappropriate?
>
> A. Because we are not a partisan community.
>
> Q. In fact, its your view that there's not anything about the treasurer's duties that would require political loyalty to the Mayor for purposes of the effective performance of those duties?
>
> A. Well, as I said, *I'm interpreting politics as partisan*, and its very hard to separate other kinds of loyalty from a broad political loyalty. I would have to say as far as partisan politics are concerned, I don't think that would be required.

*Id.* at 41-42 (emphasis added). While this testimony can be interpreted to support the argument that political loyalty was not an appropriate requirement, we do not believe this testimony mandates judgment as a matter of law for Snyder for two reasons. First, the sum of Mayor Hancock's testimony indicates she believed the position of city treasurer did require political loyalty, but to her rather than to a political party generally. She later testified:

- 10 -

Q. Now, in your experience at the city, is it your view that it would be important that the person in that position [of city treasurer] be loyal to the mayor?

A. Absolutely.

Q. And would it be important that that person be loyal to the other city administrators?

A. Very much so.

*Id.* at 171. Thus, Mayor Hancock clearly believed that whoever was city treasurer had to be loyal to the mayor and other city administrators. That she believed the political loyalty needed to flow to her personally and to other city administrators rather than to a particular political party is a distinction without a difference.

Second, and more importantly, the testimony of Mayor Hancock does not obliterate the other evidence on the record that supports the jury verdict that the position of city treasurer was one that required political allegiance. As noted above, there is substantial evidence apart from Mayor Hancock's testimony that supports that jury verdict in this case. Thus, even if we would reach a different conclusion on this issue then the jury, we cannot agree with Snyder that the evidence points but one way and is susceptible to no reasonable inferences supporting the proposition that the job of treasurer requires political allegiance. *Baty*, 172 F.3d at 1241. We are, therefore, persuaded that the district court did not err in denying Snyder's motions for judgment as a matter of law on the political allegiance question.

In the alternative, Snyder argues for a new trial on the issue on grounds that the

jury verdict was against the weight of evidence. "Where a new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1284 (10th Cir.) (quotation omitted), *cert. denied*, 528 U.S. 814 (1999). The court considers the evidence in the light most favorable to the prevailing party, *see United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1227 (10th Cir. 2000), bearing in mind that "[t]he jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000) (quotation omitted). We review for abuse of discretion the district court's denial of Snyder's motion for a new trial. *Anaeme*, 164 F.3d at 1284.

For the reasons given, we believe there are ample grounds for the jury verdict finding that the job of city treasurer required political allegiance. As such, we cannot agree that the verdict in this case was "clearly, decidedly, or overwhelmingly against the weight of the evidence." *Anaeme,* 164 F.3d at 1284. We, therefore, conclude that the district court did not err in denying Snyder's motion for a new trial.

# B

## The "Close Question" Jury Instruction

Snyder argues that the district court's refusal to give her requested "close question" jury instruction was reversible error.  We disagree.

> To determine whether the jury was adequately instructed on the applicable law, we review the instructions in their entirety de novo to determine whether the jury was misled in any way.  The instructions as a whole need not be flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them.

*Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 552 (10th Cir.) (citations omitted), *cert. denied*, 528 U.S. 813 (1999).  We note that Snyder objected to the court's refusal to give the requested instruction, as is required by Fed. R. Civ. P. 51, and that the court overruled her objection.  I Jt. App. 200-02.

The instruction Snyder requested stated in pertinent part:

> [T]he defendants must prove that the duties and powers of the treasurer involved partisan political concerns.  *If that is a close question, any doubt must be resolved in favor of Ms. Snyder—that is, you must find that the effective performance of the treasurer's job did not require the treasurer's political loyalty to the mayor.*

I Jt. App. 236 (emphasis added).

Snyder is correct in noting that in both *Dickeson*, 844 F.2d at 1442, and *Jantzen v. Hawkins*, 188 F.3d 1247, 1253 (10th Cir. 1999), we held that "[i]n close cases, doubt should be resolved in favor of the public employee subject to the dismissal."  This language was taken from *Elrod* where the Court affirmed the Seventh Circuit's reversal

- 13 -

of the district court's grant of an employer's Fed. R. Civ. P. 12(b)(6) motion holding that the burden on remand would rest on the employer to show that a position required political loyalty with "cases of doubt being resolved in favor of" the plaintiff. 427 U.S. at 368. Therefore, the term "close cases" or "cases of doubt" refers to the resolution of legal questions posed by motions for dismissal or summary judgment, rather than to fact issues requiring resolution by trial.

Of course, a preponderance of the evidence is the usual controlling standard in civil litigation. *Karnes v. SCI Colo. Funeral Servs., Inc.*, 162 F.3d 1077, 1081 (10th Cir. 1998). We there read *Price Waterhouse v. Hopkins*, 490 U.S. 228, 253 (1989), as suggesting that "the preponderance of the evidence standard is a conventional rule of civil litigation." *Id.* (internal quotations and alterations omitted). The "cases of doubt" or "close cases" jury instruction requested by Snyder would modify this standard by allowing the jury to find against the preponderance of evidence and find for an employee-plaintiff even where the employer-defendant had proven, to the jury's satisfaction, by a preponderance of the evidence that political allegiance was required for a particular position. This result would plainly contradict *Branti* and its progeny and, therefore, is a result which we cannot reach. 445 U.S. at 517 ("[P]arty affiliation may be an acceptable requirement for some types of government employment.").

We conclude that the district court did not err in refusing to give the requested "close questions" instruction.

## C

### Grant of Summary Judgment on
### Snyder's Procedural Due Process Claim

Snyder argues that the district court erred in granting defendants' motion for summary judgment on her claim that the City impermissibly fired her without giving her a pretermination hearing as required by *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985).

"If a plaintiff can prove [she] has a property interest in [her] employment, a state cannot deprive [her] of that interest without due process." *Dickeson*, 844 F.2d at 1438. "A protected property interest in continued employment exists only if the employee has a legitimate claim of entitlement to continued employment." *Id.* at 1437 (citation and internal quotation marks omitted). "Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings." *Id.* Whether an employee has a property interest in her employment is determined under state law. *Id.* at 1438 n.5.

On appeal, Snyder argues that her property interest in employment springs from the City's Personnel Policies and Procedures Manual ("the manual"). The manual provides that:

> [t]he classified service consists of the regular full-time employees of the City, except the Mayor/Administrator, City Attorney, elected officials, contractors, members of policy, advisory, review and appeal boards, or similar bodies who do not perform administrative duties as individuals and includes any other position designated by the Mayor/Administrator as an

appointment to the classified service.

I Jt. App. 14. Snyder argues that this manual provision makes her a "classified service" employee and, therefore, not "subject to separation or suspension except for cause or reasons of curtailment of work or lack of funds." *Id*. at 13 (citing the manual) (as cited in Appellant's Brief at 32).

Snyder acknowledges that this property interest exists not in her employment as city treasurer, but rather as an employee of the City generally. Specifically, Snyder argues that, "in the absence of cause for termination of Snyder, the City was required to reassign her to another City position once it was decided that she would not be appointed as treasurer." Appellant's Brief at 33-34. In other words, Snyder is arguing that the City's employee practice manual modified the mayor's statutory authority to remove the city treasurer, with or without cause, in such a manner as to grant her a property interest in continued city employment, although not as treasurer. We reject this argument for several reasons.

First, holding that the personnel manual transforms an at will employment into a for cause employment is inconsistent with Utah state law that directs the court to look to "*all circumstances of the relationship* which demonstrate the intent to terminate only for cause or to continue employment for a specified period." *Berube v. Fashion Center Ltd.*, 771 P.2d 1033, 1044 (Utah 1989) (emphasis added). As the Utah Supreme Court explained:

if an employee manual is to be considered part of an employment contract, the terms should be considered terms of a unilateral contract. Several jurisdictions have taken such an approach . . . . [F]or an implied-in-fact contract term to exist, it must meet the requirements for an offer of a unilateral contract. There must be a manifestation of the employer's intent that is communicated to the employee and sufficiently definite to operate as a contract provision. Furthermore, the manifestation of the employer's intent must be of such a nature that the employee can reasonably believe that the employer is making an offer of employment other than employment at will.

*Johnson v. Morton Thiokol*, 818 P.2d 997, 1001-02 (Utah 1991) (footnotes omitted).

Here, all circumstances of the relationship indicate an intent that Snyder was an at will employee, not entitled to another position with the City were she removed as treasurer. Mayor Stocks, who originally appointed Snyder, considered the city treasurer a statutory employee who was not entitled to a hearing before dismissal, rather than as classified employee who was entitled to a hearing. II Jt. App. 320. Furthermore, Snyder herself did not believe the city treasurer had to be given a hearing before being dismissed. At her deposition, Snyder testified:

Q. Ms. Snyder, do you have an understanding that you were entitled to some sort of hearing upon your termination by Moab City?

A. No.

Q. Do you understand that you were not entitled to a hearing?

A. I'm under the understanding that I was not entitled to a hearing.

Q. Okay. Do you have the understanding that somehow Moab City or Mayor Hancock did not follow appropriate measures in terminating you?

A. If I was entitled to a hearing, yes, they did not follow proper procedure.

- 17 -

II Jt. App. 310.

The only evidence offered to the contrary was the employee manual. It is therefore clear that, it was only after her employment as treasurer was terminated, that Snyder began to believe that she had been employed as a classified rather then statutory employee. Consequently, there was never an agreement between Snyder and the City to change the terms of her employment from at will to for cause.

Second, even assuming that there was such an agreement, it would be an impermissible interference with a mayor's power of appointment as granted by state law. *Farnsworth v. Town of Pinedale, Wyo.*, 968 F.2d 1054, 1057 n.2 (10th Cir. 1992) (dealing with a similar statute of appointment under Wyoming law). Utah law gives the mayor of a city of Moab's size (which in the 2000 U.S. census was 4,779)[4] the power to appoint the city treasurer, with the advice and consent of the city council. Utah Code Ann. § 10-3-916(1). As the Utah Supreme Court explained:

> unless otherwise controlled by statute, the power to suspend or dismiss is appurtenant to the power to appoint. When an individual is appointed by an official, "the office is held during the pleasure of the authority making the appointment, and . . . no notice or charges or hearings are required for the suspension or removal by the authority appointing the officer."

*Hutchison v. Cartwright*, 692 P.2d 772, 773-74 (Utah 1984) (citing *Sheriff of Salt Lake County v. Bd. of Comm'rs of Salt Lake County*, 268 P. 783, 784 (1928)). The mayor's

---

[4] *2000 U.S. Gazetteer*, U.S. Census Bureau, *available at* <http://www.census.gov/ftp/pub/tiger/tms/gazetteer/places2k.txt> (visited Aug. 12, 2002).

power of appointment, granted by State law, cannot be interfered with or rendered meaningless by municipalities giving appointees more employment rights then state law requires. *Farnsworth*, 968 F.2d at 1057 n.2.

In this case, as the district court noted, "A city mayor may, for example, hesitate to appoint (or remove) if she knows that the appointed (or terminated) individual will remain on the city payroll after leaving an appointed position." I Jt. App.19m n.4. As such, "[g]ranting appointed officials for cause employment status (even elsewhere as a city employee) infringes on the mayor's right to appoint and remove." *Id.* Such an infringement is particularly acute given the small size of the City of Moab. Therefore, even assuming that there was an agreement between Snyder and the City to change Snyder's employment from at will to for cause, such an agreement is void under the rule in *Farnsworth*, 968 F.2d at 1057.

Finally, the facts here indicate that Snyder was terminated, not for cause, but because her term of appointment (equivalent to the appointing mayor's term of office) had expired. Under Utah law, just as an employer and employee may agree to terminate an employee only for cause, the parties may also agree that employment is to continue for a specified term. *Berube,* 771 P.2d at 1044. Here, Snyder was not fired but rather was not reappointed to her previous position as city treasurer. Thus, it was the expiration of her term of employment, which also extinguished whatever property right she might have had in her employment, that occurred upon her termination as city treasurer.

We reached a similar result in *Farnsworth*, 968 F.2d at 1057. There, applying a Wyoming law similar to Utah Code Ann. § 10-3-916(1), we affirmed the district court's grant of summary judgment for the employer, holding that the city clerk/treasurer "possessed a constitutionally protected property right in continued employment [which] extended only until the end of [her] term of office, at which time the incoming mayor and town council had the option to replace [her]." *Id.* We concluded that the city clerk/treasurer's "constitutionally protected property right in continued employment ceased upon the election of the new mayor and town council," who had the statutory right of appointment. *Id.* at 1058. Therefore, even assuming that there was an agreement between Snyder and the City that made her a "classified employee," and assuming that this agreement was not an impermissible interference with the mayor's right of appointment, Snyder's property right in her employment as city treasurer–and her right to a pretermination hearing–expired when Mayor Stock's term of office expired.

For these reasons, we agree with the district court's conclusion that Snyder's evidence was insufficient, as a matter of law, to raise a question of material fact as to whether she had a property interest in her employment as treasurer for the City of Moab. As such, Snyder was not entitled to a pretermination hearing and, therefore, the district court did not err in granting the City's motion for summary judgment on Snyder's Fourteenth Amendment claim.

**III**

For the foregoing reasons, we hold that the district court did not err in denying Snyder's motions for judgment as a matter of law or for a new trial, in refusing to give her requested "close question" jury instruction, or in granting summary judgment for the defendants on Snyder's procedural due process claim.

**AFFIRMED.**