McCONNELL, Circuit Judge.
In 1999, newly-elected Sequoyah County Commissioner Cleon Harrell appointed Plaintiff-Appellant Bill Poindexter to serve as Road Foreman for his district. After Harrell’s retirement and the election of Defendant-Appellee Mike Huff as District 3 Commissioner in 2006, Huff demoted Poindexter and replaced him as Road Foreman with one of Huffs political supporters. This occurred after Poindexter declined to support Huff, briefly ran against Huff for the Commission seat, and then worked for opponents of Huff in the primary and general elections. Mr. Poin-dexter filed suit in district court, claiming that this demotion violated his First Amendment rights of speech and political association.[1]
The district court granted summary judgment for the defendants on several grounds, including that the Road Foreman job is one for which political loyalty may appropriately be required. See Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); Barker v. City of Del City, 215 F.3d 1134, 1138 (10th Cir.2000). We affirm.
I. Background
Mr. Poindexter was originally hired as Road Foreman by County Commissioner Cleon Harrell after his election to that position in 1999. Poindexter was a political supporter of Commissioner Harrell. In 2005, amidst rumors that Commissioner Harrell might resign, Mike Huff began to test the waters. In July, Mr. Huff called Mr. Poindexter and asked him if he wanted to keep his job if Mr. Huff was ultimately elected. If so, Huff suggested that the two get together to “go over some things.” In response, Mr. Poindexter expressed his full support for the incumbent Harrell and refused to campaign or speak out against him. Mr. Huff then assured Mr. Poindexter that he was not asking him to oppose Commissioner Harrell, but that if he were elected to the position he wanted Poindexter to continue to serve as Road Foreman. Poindexter responded, “that will work.”
After this conversation, “rumor” and “gossip” led Mr. Poindexter to believe that Mr. Huff actually intended to make another man, Ed Watts, his Road Foreman if elected. In October 2005, Commissioner Harrell announced his resignation, and a special election for the position was scheduled in February 2006. Concerned that he would lose his job, Mr. Poindexter ran an advertisement in the local newspaper on November 3, indicating that he intended to run for Commissioner himself. His campaign was short-lived. Mr. Poindexter decided not to run for Commissioner due to various personal problems, though he never made a formal announcement that he was no longer running.
Upon the announcement of Poindexter’s candidacy, Mr. Huff called Mr. Poindexter and told him, “I thought you were going to be my foreman.” Poindexter responded that he had heard that Ed Watts was going to be Huffs foreman. Huff then stated, “well, I talked to him first. I’ll find someone else to help me.” What happened at this point is disputed. The defendants point to evidence that Mr. Huff asked Mr. Poindexter repeatedly to be his Road Foreman if he was elected, and Mr. *919 Poindexter refused. The plaintiff denies that he told Huff he did not want to be retained in the position if Huff were elected.
A few weeks later, on November 14, Mr. Huff announced his candidacy for County Commissioner, stating as part of that announcement that Ed Watts would be his Road Foreman. Watts endorsed Huffs candidacy and gave him political support. Mr. Huff won the election. The day he was sworn into office, he hired Mr. Watts as his Road Foreman. That same day, he told Mr. Poindexter that he would give him a job paying $10,000 less than his old Road Foreman position. Commissioner Huff gave Mr. Poindexter two weeks of paid vacation to decide whether to take the job, and he ultimately declined the offer.
II. Analysis
The Supreme Court has held that many public employees have the right, with certain limitations, to engage in political activities opposed to their elected superiors without penalty to their jobs. See Elrod v. Burns, 427 U.S. 347, 356, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Recognizing, however, that democratic governance requires that the voters be able to influence the conduct and the selection of policy-making and politically significant officials — to “throw the rascals out” — the Court has held that political loyalty “is an appropriate requirement for the effective performance” of some government positions. Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The two-part test laid out in Elrod and further refined in Branti determines whether a government employee’s demotion violates his right to free political association. To survive summary judgment, an employee needs to show a “genuine dispute of fact that (1) political affiliation and/or beliefs were ‘substantial’ or ‘motivating’ factors” in his demotion, and (2) his position did not require political allegiance. Barker v. City of Del City, 215 F.3d 1134, 1138 (10th Cir.2000).
The parties dispute whether the evidence establishes that Commissioner Huffs decision to demote Mr. Poindexter and hire Mr. Watts was motivated by Mr. Poindexter’s perceived political affiliation.[2] We need not resolve that dispute, because, as the district court held, the Road Foreman position appropriately requires political loyalty and Commissioner Huff was therefore entitled to give the job to a political supporter. To defend against a First Amendment claim on this ground, a public employer has the burden of proving that political loyalty is an “appropriate requirement for the effective performance of the public office involved.” Barker, 215 F.3d at 1138 (quoting Branti 445 U.S. at 518, 100 S.Ct. 1287). The question is not whether any particular political superior (in this case, Commissioner Huff) actually takes political loyalty into account, but whether the nature of the position would appropriately permit him to do so. This Court has held that this determination is a question of fact. Snyder v. City of Moab, 354 F.3d 1179 (10th Cir.2003) (citing Barker, 215 F.3d at 1137); see also McCollum v. Stahl, 579 F.2d 869, 873 (4th Cir.1978) (holding that the nature of the relationship *920 between the sheriff and deputy was a question of fact to be determined by a jury), cert. denied, 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979). In determining whether a position appropriately requires political allegiance, we focus on the inherent powers of the position and the actual duties performed. Jantzen v. Hawkins, 188 F.3d 1247, 1253 (10th Cir.1999). Thus, if a significant factual dispute regarding the employee’s job duties exists, summary judgment is inappropriate. Of course, if the job description and duties performed are undisputed, then the district court may resolve the issue as a matter of law.
The district court found that the Road Foreman’s powers and duties included supervising the district’s employees as well as supervising inmates working within the district; addressing all safety issues and running safety training; delegating and supervising project assignments; terminating employees for cause; working as County Commissioner if he is absent (but still under the other two Commissioners’ supervision); spending county money to purchase materials and supplies; and acting as an ambassador to the community on behalf of the Commissioner. Dist. Ct. Or. 1-2. Commissioner Harrell testified in his deposition that the Foreman “acts as pretty much the assistant commissioner,” doing whatever the Commissioner would do when the Commissioner is absent. R. 214. He further testified that it was “vital to [him] that [his] foreman be someone that could enforce and would enforce [his] policies.” R. 107. Commissioner Huff testified to similar effect. Mr. Poindexter himself testified that he was “responsible for everything in District 3 and that is 24 hours a day, seven days a week.” R. 244. He stated that he was “responsible for kind of setting some guidelines as to how [the road crew members] do their work and how projects are completed.” R. 245. He said that he would make modest expenditures on his own authority — $600 was the example he used — but that before making “big” expenditures — $3000 was the example — he would talk with the Commissioner. R. 265-66. When asked if he had responsibilities relating to citizens of the county, Mr. Poindexter responded, “You’re responsible for being an ambassador for your commissioner,” which includes answering what seems like “10,000 calls a year.” R. 245. Mr. Poindexter also affirmed that “[i]f the commissioner was unavailable, whether it was [because] he was off, or he was in meetings, or out of town for something,” the Road Foreman would “step into somewhat his shoes with respect to running the county.” R. 60-61. It is undisputed that the Road Foreman reports directly to the Commissioner and there is no intermediary supervisory authority over him.
We believe that, on this record, a reasonable jury would be forced to conclude that the office of Road Foreman has a significant political dimension and sufficient discretionary authority that the County Commissioner, for whom the Foreman works, may properly take political loyalty into account. Courts in other parts of the country have reached similar conclusions, though the precise job positions are vested with different responsibilities in different jurisdictions, making firm cross-jurisdictional generalizations impossible. In Gentry v. Lowndes County, 337 F.3d 481 (5th Cir.2003), the Fifth Circuit found that political allegiance is an appropriate requirement of a county Road Manager under Mississippi law. In Mississippi, the Road Manager runs the county road department, supervises bridge and road construction, helps prepare a budget, purchases and leases equipment, hires assistants and employees, and carries out the general policies of the county board of *921 supervisors. Id. at 487. Similarly, in Hoard v. Sizemore, 198 F.3d 205 (6th Cir. 1999), the Sixth Circuit found that political allegiance is an appropriate requirement of the position of “County Road Department Foreman and Garbage Coordinator.” This position involved maintaining all of the roads in the county, supervising the county road and garbage departments, reporting directly to the county-judge executive, serving as a liaison to the public regarding road problems, and answering and addressing complaints from the public. Id. at 213-14; see also Langley v. Hot Spring County, 393 F.3d 814, 818 (8th Cir.2005) (holding that political allegiance is an appropriate requirement of a road foreman where the road foreman reports directly to the chief executive and has significant contact with the public). We believe that the positions involved in these cases are sufficiently similar to that of district Road Foreman in Oklahoma to lend support to our conclusion in this case.
Although not cited by either party, the best case for the plaintiff is another Fifth Circuit decision, Wiggins v. Lowndes County, 363 F.3d 387 (5th Cir.2004), which held that the position of district “Road Foreman” in Mississippi, unlike that of county “Road Manager,” is sufficiently nondiscretionary that it is not appropriate to require political allegiance. In Mississippi, Road Foremen implement the projects determined by the Road Manager, supervise and assign work to the road crew, inspect equipment, maintain records and inventories, inspect roads and bridges, advise the Road Manager of repairs, and perform other duties assigned by the Road Manager. Id. at 390. The court held that these duties, unlike those of Road Managers, do not involve policymaking or require confidentiality. Id. at 391. This decision might seem especially pertinent to this case because Mr. Poindexter’s position was that of district Road Foreman, and not that of county Road Manager. On reflection, however, we think the Wiggins case is distinguishable. In Oklahoma at the time of the events in this case, there were no county-wide Road Managers; the district-level Road Foremen were the highest officials in the road departments, subject only to the supervision and control of the Commissioners. In most respects, including its discretionary authority over supervising employees, determining work priorities, making spending decisions, and serving as the communications link between constituents and the Commissioner, the position of district Road Foreman in Oklahoma more closely resembles that of Road Manager than Road Foreman under Mississippi law.
Mr. Poindexter cites to the district court’s unpublished decision in Lunsford v. Board of County Commissioners, which refused to hold as a matter of law that the Road Foreman position in Oklahoma requires political allegiance. 2006 WL 2679578 at * 4-5 2006 U.S. Dist. LEXIS 67119, at * 12-* 13 (LexisNexis Sept. 18, 2006). 'With all respect to the district judge in that case, who sits in the state and is familiar with its practices, we do not agree with the court’s reasoning. According to the court, political loyalty is, as a matter of law, an inappropriate requirement because there is “no political or partisan way to fix roads.” Lunsford, 2006 WL 2679578, at * 4, 2006 U.S. Dist. LEXIS 67119, at * 13. We think this understates the role of road construction and maintenance in rural counties. The decisions involved in road, construction and repairs are often of utmost importance to constituents and many times are motivated by political goals. As the Fifth Circuit observed in Gentry, 337 F.3d at 487, “Roads in rural Mississippi are the political lifeblood of elected officials, and the public’s view of the elected supervisors *922 depends greatly on the road manager’s performance and supervision of employees.” We believe the record in this case unequivocally shows that the same is true in Sequoyah County, Oklahoma.
Mr. Poindexter maintains that summary judgment was improper because the following disputed issues of material fact remained: (1) whether Mr. Poindexter was an “ambassador” for the Commissioner; (2) whether the road foreman performs the duties of the Commissioner if he is absent; and (3) whether the road foreman had to consult with the Commissioner before making large expenditures. We do not agree. Mr. Poindexter himself, in his deposition, described the position of Road Foreman as “ambassador for your commissioner,” and explained that the Foreman would, in the Commissioner’s absence, “step into somewhat his shoes with respect to running the county.” Mr. Poindexter’s statement may not imply that the Road Foreman performs all of the duties of the Commissioner when he is absent, but that is not necessary to establish that the position has a significant political dimension.
The dissent makes much of the fact that Commissioner Huff testified in his deposition that he did not in fact take Mr. Poin-dexter’s political loyalty into account when he demoted him and hired Mr. Watts to take his place. See R. 305 (“I didn’t care if [Poindexter] run [sic] for county commissioner. He could run for it and if I won the election, he could still be the road foreman.”); id. at 307 (when Huff was asked whether he considered the political support of persons he might hire as Road Foreman, he responded, “No, I didn’t mind if they supported somebody else, no sir.”) (both quoted at Diss. Op. 927). These statements, if believed, mean only that Huff himself did not choose to hire on the basis of political loyalty. The statements have no bearing on whether, objectively speaking, the Road Foreman position is one for which a Commissioner could appropriately insist on political loyalty. Politicians are always free to appoint (or claim to appoint) government officials on the basis of merit or experience rather than politics. Huffs remarks are like a President claiming his choice of a particular cabinet secretary was “nonpartisan.” A high-minded sentiment, to be sure, but irrelevant to the constitutional character of the office.
We recognize that there is evidence that Mr. Poindexter’s discretion as Road Foreman was limited in some ways. The Road Foreman could only fire employees for “just cause,” R. 216, and the only employee whom Mr. Poindexter dismissed was ultimately rehired several weeks later by Commissioner Harrell. R. 220. Mr. Poin-dexter testified in his deposition that he “didn’t have the authority ... to make great big decisions,” including making large expenditures, without consulting the Commissioner. R. 264. Moreover, his authority to commit county funds was constrained by a budget. R. 218-19. Finally, two Commissioners from other districts supervised Mr. Poindexter in the two-and-a-half month period after Commissioner Harrell resigned and before Mr. Huff was elected. R. 266. Mr. Poindexter was not acting as Commissioner during this time, and did not attend County Commission meetings in Commissioner Harrell’s stead. R. 479-81.
Viewing this evidence in the light most favorable to the plaintiff, as we must, we still do not think it is sufficient to permit a reasonable jury to conclude that the Road Foreman position was so lacking in discretionary authority as to make political allegiance an inappropriate requirement. That Mr. Poindexter’s employment decisions were subject to review by Commissioner Harrell does not mean that the *923 Road Foreman position lacked discretionary authority, any more than the fact that the President can override a cabinet secretary’s decisions renders the latter a ministerial office. And it is not atypical that the authority of an official, even an important one, to expend public money is capped, or constrained by a budget. Nor is it significant that Mr. Poindexter was subject to the supervision of other commissioners after Mr. Harrell’s departure from office; no one contends that Road Foremen are independent agents not subject to Commissioner supervision. In sum, the undisputed evidence, including Mr. Poindexter’s own testimony, shows that the position of Road Foreman involves substantial (even if not unlimited) discretion and has a significant political dimension as a communications link between constituents and their Commissioner.
Mr. Poindexter’s briefs in this Court point to almost no evidence contrary to the conclusion that his position had a significant political dimension. To challenge the claim that Poindexter had authority to commit county funds, the brief cites a span of three pages in the record, which come from Commissioner Harrell’s deposition testimony. Aplt. Rep. Br. 18. In these pages, Harrell explained that, as a “requesting officer,” the Road Foreman had authority to “commit county funds” to purchase materials, within the limits of a budget. R. 217-19. Mr. Poindexter himself testified elsewhere that he could spend county funds on his own authority, but that for a “big” expenditure (on the order of $3000) he would consult with the Commissioner first. R. 264-65. See also R. 265 (explaining that “I could have [spent the larger sum without contacting a commissioner], but I did not because I wanted to be on the same page.”).
To challenge the claim that Poindexter had authority to fire road crew employees, the reply brief cites three pages in the record. Aplt. Rep. Br. 17. Two of those pages are from Commissioner Harrell’s testimony. On the first of these pages, Harrell testified that the Road Foreman had authority to fire employees, but only for just cause, and that Mr. Poindexter fired only one employee, for disobeying orders. R. 216-17. On the second cited page, Harrell stated that some “two, three, four weeks” after Poindexter fired this employee, Harrell “brought him back.” R. 220. He does not explain why, or state that the discharge was improper or invalid. The third page is the introduction to the county employee handbook, which includes the statement, “Each employee is responsible to the elected official who hires and/or appoints that employee.” R. 360.
The fact that a government official’s authority to spend public funds is capped, or limited by a budget, or that his employment decisions may be overruled by a higher-ranking elected official, does not render his position nondiscretionary or ministerial. Appellant’s briefs do not question the fact that the Road Foreman regularly communicates with the public on behalf of the Commissioner, which is the most important single fact in support of the conclusion that the job has a component of political loyalty.
The plaintiff also raised, in the alternative, a free speech claim based on the theory that his demotion was in retaliation for Mr. Poindexter’s July 2005 averment of loyalty to then-Commissioner Harrell. We agree with the district court that there was insufficient evidence to go to the jury on this claim. At that time, Mr. Huff had not decided to run against Commissioner Harrell. Indeed, he told Poindexter that he probably would not run if Harrell ran for re-election. R. 254. In the conversation, Huff gave no indication whatsoever that he was offended by Poindexter’s statement of *924 support for the incumbent. In fact, he offered Mr. Poindexter the job even after that statement. R. 251. In response, Mr. Poindexter agreed to serve if Huff won election as Commissioner. The conversation thus does not reveal hostility on either man’s part toward the other. Moreover, at the time of the conversation, Mr. Huff had little or no reason to be offended even if Mr. Poindexter had declined. Mr. Huff did not run for Commissioner until months later, when Harrell had resigned and there was a special election. The evidence is undisputed that, as of July 2005, Mr. Huff was reluctant to challenge Mr. Harrell and did not run in a race against him; in other words, they were not political opponents. There is no evidence that Poindexter’s expression of loyalty to Harrell in July 2005 offended Huff or was to his political disadvantage at that time, and therefore no reason to infer that this was a motivating factor in the subsequent demotion.
Because we have affirmed the district court’s grant of summary judgment in favor of the defendants on both the political association claim and the free speech claim, there is no need to address the Sequoyah County Board of Commissioners’ contention that it is immune from suit under Monell v. N.Y. City Dept. of Social Servs., 436 U.S. 658, 694-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s grant of summary judgment.

. After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

. The district court granted summary judgment in favor of the defendants on the ground that Mr. Poindexter failed to offer evidence from which a reasonable jury could conclude that his political speech or association was a motivating factor in his demotion. Because we affirm summary judgment on the political association claim on other grounds, there is no need for us to consider that holding. We will discuss whether Mr. Poindexter's speech (specifically, his statement to Mr. Huff in July 2005 that he was supporting Commissioner Harrell) was a motivating factor in his dismissal below.