**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**


GLENN R. SMITH,

           Plaintiff - Appellant,

v.

SUSANA MARTINEZ; in her
individual capacity, STATE OF NEW
MEXICO,

           Defendant - Appellant.

No. 14-2027
(D.C. No. 1:13-CV-00168-JAP-GBW)
(D. of N.M.)


**ORDER AND JUDGMENT**[*]


Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.[**]


Glenn Smith appeals from the district court's order granting summary

judgment to New Mexico Governor Susana Martinez, in her individual capacity,

and to the State of New Mexico. Smith sued claiming that Governor Martinez

unlawfully terminated him from his position as director of the state Workers'

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Compensation Administration (WCA) in retaliation for his political affiliation. He alleged violations of the First Amendment, the Due Process Clause of the Fourteenth Amendment, the Takings Clause of the Fifth Amendment, and breach of contract.

We agree with the district court that the director position was terminable by the Governor under state law and that no federal law violation occurred.

## I. Background

Smith was appointed director of the WCA in 2007 by then-Governor Bill Richardson, a Democrat. A statute provides that the director shall serve for five years and continue to serve until a successor is appointed and qualified. N.M. Stat. § 52–5–2(A). Nonetheless, when Governor Richardson asked the state Senate to confirm Smith's appointment, his message to the President Pro Tempore mentioned that Smith's term was "to be served at the pleasure of the Governor." R., Doc. 56 at 000145.

Smith supported Governor Richardson's presidential campaign in 2008, and he later supported the Democratic candidate in the 2010 New Mexico gubernatorial election. Governor Martinez, a Republican, won the election. Shortly after her election, she circulated a memo explaining that "exempt employees[1] who serve[d] at the pleasure of the Governor [we]re expected to

---

[1] As the head of an agency or department appointed by the Governor, the
<span style="float:right">(continued...)</span>

submit their letters of resignation to the Governor who appointed them effective December 31, 2010." *Id*. at 000114. Smith did not resign, but Governor Martinez terminated him on January 1, 2011.

Smith filed a petition for writ of mandamus in the Supreme Court of New Mexico, asking the court to prevent Governor Martinez from terminating him because he was entitled to a five-year term under § 52–5–2(A). The court denied the petition without discussion, and Smith's successor assumed the directorship on February 1, 2011. Smith then brought this action, alleging violations of his First Amendment right to freedom of political affiliation, his Fourteenth Amendment right to due process, his Fifth Amendment right against a taking without just compensation, and breach of contract.

The district court granted summary judgment to the defendants for all claims.

## II. Analysis

Smith contends the district court erred in concluding he served at the pleasure of the Governor, arguing that he is not an at-will employee of the state, but rather an independent officer immune from the rules that apply to exempt

---

[1](...continued)
director is considered an "exempt" employee for purposes of New Mexico's Personnel Act, meaning his salary range is prepared by the Department of Finance and Administration and approved by the Governor. *See* N.M. Stat. §§ 10–9–4, 10–9–5.

employees. He argues that his termination violated the United States Constitution's First Amendment, Due Process Clause, and Takings Clause guarantees.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view the facts and draw reasonable inferences in the light most favorable" to the nonmovant. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

We conclude the district court did not err in granting summary judgment.

### A. *Constitutional Claims Against the State of New Mexico*

Smith does not specify the source of his constitutional causes of action, but he appears to raise his claims under 42 U.S.C. § 1983, which provides a cause of action against persons acting under the color of state law for the deprivation of a constitutional right. But "§ 1983 actions do not lie against a State." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997). Thus, the district court properly granted summary judgment to the State of New Mexico on Smith's constitutional claims.

### B. *First Amendment Claim Against Governor Martinez*

Smith also argues that Governor Martinez violated his First Amendment right to freedom of affiliation by terminating him based on his connection to the

Democratic Party. The district court found Smith's position was a policymaking role that commanded political allegiance and was therefore dischargeable. More so, the court concluded that the termination did not violate clearly established federal law and the Governor was therefore entitled to qualified immunity. We agree.

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Snyder v. City of Moab*, 354 F.3d 1179, 1184 (10th Cir. 2003) (internal quotation marks omitted). Thus, a public employee who has been "discharged because of his or her position regarding a particular candidate for office" may assert a valid § 1983 claim for a First Amendment violation "except where the public employee is in a position requiring political allegiance." *Id*. at 1184–85. But if the employer shows that "party affiliation is an appropriate requirement for the effective performance of the public office involved," then the employer has not violated the First Amendment. *Id*. at 1185 (citing *Branti v. Finkel*, 445 U.S. 507, 518 (1980)). Accordingly, to survive a motion for summary judgment, employees must show a "genuine dispute of fact that (1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors behind their dismissals and (2) [their] respective employment positions did not require political allegiance." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999).

Although often questions of fact, allegations of this sort may be "resolved as a matter of law if the facts as to the nature of the duties of the position are undisputed." *Snyder*, 354 F.3d at 1185. Determining whether a position requires political allegiance calls for an "analysis of the whole picture." *Id*. In particular, "we must focus on the inherent powers of the positions and the actual duties performed." *Jantzen*, 188 F.3d at 1253. There is no "one specific factor" that must be proven and no "clear line" between "positions that require political allegiance and those that do not." *Snyder*, 354 F.3d at 1185. We have recognized, however, that although not all policymaking positions necessarily require political loyalty, "the fact that a particular position has policy making authority does support the conclusion that political loyalty is an appropriate requirement." *Id*. at 1186 (citing *Elrod v. Burns*, 427 U.S. 347, 367–68 (1976) (plurality opinion)).

An instructive application of these principles is found in *Poindexter v. Board of County Commissioners*, 548 F.3d 916, 919–21 (10th Cir. 2008). In that case, we concluded that the county road supervisor position required political allegiance where his responsibilities included supervising employees and assignments, terminating employees, addressing safety issues, using county funds to buy supplies, enforcing the County Commissioner's policies and serving as his "ambassador to the community," acting in the Commissioner's place if the Commissioner was unavailable, and reporting directly to the Commissioner. *Id*.

at 920. We held that "a reasonable jury would be forced to conclude that the office of Road Foreman has a significant political dimension and sufficient discretionary authority" that the Commissioner could fire him for his political allegiance. *Id.* Similarly, in another case, *Green v. Henley*, 924 F.2d 185, 187 (10th Cir. 1991), we held that assisting in "policy development" was evidence of a position requiring political allegiance.

As the district court concluded, the same is true here. First off, the statutory language alone evidences that Smith's position required political allegiance. The director is the chief administrative officer of a significant state agency regulating workers' compensation and disability programs. This position confers rule-making authority and the responsibility to "effect[] the purposes" of state statutes. N.M. Stat. § 52–5–4(A). In addition, the director appoints workers' compensation judges, reviews their performance, and has the option to reappoint them. He or she can "promulgate and enforce schedules of reimbursement" to healthcare providers for some services "as he deems appropriate and necessary in the administration of the Workers' Compensation Act or the New Mexico Occupational Disease Disablement Law." N.M. Stat. § 52–5–4(C).

Moreover, the director may "institute in his own name an action" against employers who do not comply with certain laws regarding insurance coverage. N.M. Stat. § 52–1–62(A). The director also serves as a nonvoting member on an

advisory council that recommends new legislation, N.M. Stat. § 52–1–1.2(A)–(C), and has the power to investigate allegations of unfair claims processing, N.M. Stat. § 52–1–28.1(A). Finally, the director can enter reciprocal agreements with workers' compensation agencies in other states, *subject to the Governor's approval*. N.M. Stat. § 52–1–68. Smith argues that no evidence was presented that he actually performed some of these duties, but this is irrelevant because we consider *both* the actual duties performed *and* "the inherent powers of the positions." *Jantzen*, 188 F.3d at 1253. The director's duties and responsibilities therefore demonstrate a substantial policymaking role that commands political allegiance within New Mexico's political system.

Smith argues against this conclusion, pointing out that the WCA and its director serve quasi-judicial functions. He notes that WCA judges, rather than state district courts, adjudicate workers' compensation disputes. He adds that WCA judges must be licensed to practice law, that their decisions are appealed directly to the Court of Appeals of New Mexico, and that independence and impartiality are essential to their performance. Furthermore, Smith asserts that the director himself reviews complaints regarding WCA judges. He also claims that the director designates mediators who give non-binding recommendations as

to how opposing parties should resolve their workers' compensation disputes.[2] *See* N.M. Stat. § 52–5–5(C).

But the director's involvement with some quasi-judicial functions does not negate statutory powers that require political alignment with the Governor. The director is not a judge, but an administrator. There is no question that the director's responsibilities in "effecting the purposes" of state statutes, crafting new rules and regulations, serving on an advisory council that recommends new legislation, appointing new WCA judges, suing to enforce statutory provisions, and entering interstate agreements subject to the Governor's approval, to name just a few, are strictly political functions that demand coordination with the state's executive branch. The director has a great deal of discretion in carrying out these duties, such that he could easily frustrate the policy goals of an adverse administration.

Smith's argument that the directorship's five-year statutory term evinces an intent to insulate it from the Governor, whose term is shorter than five years, is also unpersuasive. The state Constitution provides that "[t]he governor shall nominate and, by and with the consent of the senate, appoint all officers whose appointment or election is not otherwise provided for *and may remove any officer appointed by him unless otherwise provided by law*." N.M. Const. art. V., § 5

---

[2] Both parties are free to reject the mediator's recommendation, at which point the claim would be assigned to a WCA judge. N.M. Stat. § 52–5–5(C).

(emphasis added). A law barring the removal of an officer "must come from the Constitution or legislation." *State ex rel. N.M. Jud. Standards Comm'n v. Espinosa*, 73 P.3d 197, 204 (N.M. 2003).

The Supreme Court of New Mexico in *Espinosa* rejected Smith's argument that "implied terms . . . negate the Governor's express removal authority," absent "a compelling reason to hold otherwise." *Id*. The court accordingly denied a claim that staggering appointees' five-year terms "impliedly limits the Governor's removal power" where the Governor attempted to remove members of the state Judicial Standards Commission before their terms expired. *Id*. at 202. It is therefore clear that because § 52–5–2(A) merely creates a five-year term, rather than expressly barring the Governor from terminating the director, Smith's termination was lawful under New Mexico law and did not undermine a legislative intent to insulate him from politics. The Supreme Court's denial of Smith's petition for writ of mandamus further supports this conclusion.

Viewing the facts as a whole and in the light most favorable to Smith, there is no genuine issue of material fact as to whether the directorship requires political allegiance. Therefore, the district court properly dismissed Smith's First Amendment claim on summary judgment.

In addition, Governor Martinez would be entitled to qualified immunity even had her actions violated Smith's First Amendment rights. "The doctrine of qualified immunity protects government officials from liability for civil damages

-10-

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). For a constitutional violation to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012). Because of the responsibilities such as (1) "effecting the purposes" of state statutes, (2) making new rules and regulations, (3) serving on an advisory council that recommends new legislation, (4) appointing new administrative judges, (5) suing to enforce statutory provisions, and (6) entering interstate agreements subject to the Governor's approval, it is far from clearly established that an agency head may not be terminated based on political affiliation.

### C. *Due Process and Takings Claims Against Governor Martinez*

Smith next contends that Governor Martinez violated his rights under the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment. It is not clear whether he alleges a violation of substantive due process, procedural due process, or both. Moreover, although Smith argues at length that he was deprived of a property right, he does not identify any standards for evaluating whether the alleged deprivation violated due process or any suggestions as to what type of process was required.

Nor does Smith identify any authority whatsoever for evaluating a Takings Clause claim. Consequently, these claims are inadequately briefed and we need not review them. *See Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review." (internal quotation marks omitted)); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."); *see also* Fed. R. App. P. 28(a)(8)(A) ("The appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . .").

At any rate, Smith's claims would still not prevail. "[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest." *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). Smith asserts that an employment position for a term of years is a protected property interest. In New Mexico, there is a property interest in employment if there is "an express or implied right to continued employment." *Lovato v. City of Albuquerque*, 742 P.2d 499, 501–02 (N.M. 1987). The question is therefore whether the five-year term under § 52–5–2(A) created an express or implied right to Smith's continued employment as WCA director.

-12-

In New Mexico, "[a] public office is not property, and the right to hold it is not a vested one." *State ex rel. Ulrick v. Sanchez*, 255 P. 1077, 1087 (N.M. 1926). We have accordingly held, where a New Mexico gubernatorial appointee was fired before his term expired, that "public office or employment generally is held not to be a property interest within the meaning of the Fourteenth Amendment, and particularly so in those circumstances where no right to continued employment exists." *Mitchell v. King*, 537 F.2d 385, 391 (10th Cir. 1976). The New Mexico Supreme Court has added that because "members of boards and commissions and agency heads" are exempt from the state's Personnel Act,[3] "the Legislature acknowledges that such policy-making positions are different from other types of employment positions and that such category of persons are not entitled to hearings before removal from their positions." *State ex rel. Duran v. Anaya*, 698 P.2d 882, 885 (N.M. 1985).

Moreover, as already discussed, § 52–5–2(A) does not create any right of continued employment. The state Constitution allows the Governor to remove employees unless "otherwise provided by law," N.M. Const. art. V., § 5, and the New Mexico Supreme Court has rejected the argument that the legislature could use "implied terms to negate the Governor's express removal authority," absent "a compelling reason to hold otherwise." *Espinosa*, 73 P.3d at 204. The members of the Commission in *Espinosa* had staggered, five-year terms, so that one member's

---

[3] The WCA director is exempt from the Act. *See supra*, at n.1.

term would expire each year. *Id*. at 198. They argued, much as Smith does here, that a statutory term of years would be meaningless if the Governor had plenary authority to remove them. The court held that "[t]he removal authority applies indiscriminately to all gubernatorial appointees" and that any limit on that power would have to be "expressly stated." *Id*. at 204. Thus, the fact that the statute creates a five-year term cannot by itself bar the Governor from terminating the director. Any such restriction would have to be expressly stated.

Smith counters that *American Federation of State, County and Municipal Employees v. Martinez*, 257 P.3d 952 (N.M. 2011), controls. In that case, the Supreme Court of New Mexico distinguished *Espinosa* in holding the Governor could not terminate members of the Public Employee Labor Relations Board consistent with the Due Process Clause. Allowing the Governor to terminate board members conflicted with the "careful balance" envisioned by the state legislature when it promulgated the statute that created the board. *Id*. at 956. Specifically, one of the statute's purposes was to create a "balanced and, therefore, neutral body" to "promote harmonious and cooperative relationships" between public employers and employees and to adjudicate labor disputes involving the Governor. *Id*. at 955. Smith claims the statute creating the WCA similarly requires balance and neutrality.

But reliance on this holding is misplaced, as the court's departure from *Espinosa* was predicated on the fact that the Governor did not have "absolute

-14-

appointment authority" over these positions in the first place. *Id*. at 957. Rather, the Governor was limited to "one member recommended by organized labor, one member recommended by public employers, and one neutral member jointly recommended by these two appointees." *Id*. at 953. It was this very process that evinced a legislative desire for balance and neutrality. *See id*. at 955–56. Here, Governor Richardson was not similarly limited in his choice of director when he appointed Smith. Thus, we see no reason why *Espinosa* would not apply.

Finally, Smith argues that *Espinosa* is not on point because it involved lay Commission members, rather than salaried employees. This fact is irrelevant. For Smith to succeed, there must be a genuine issue of material fact as to whether he had an express or implied statutory right to continued employment. Such a right does not exist if the state Constitution allows the Governor to remove him at will, and the Governor's removal power applies to "all officers whose appointment or election is not otherwise provided for." N.M. Const. art. V., § 5. The text does not distinguish between salaried and unsalaried appointees. Nor does the relevant case law draw such a distinction. To the contrary, "[t]he removal authority applies indiscriminately to all gubernatorial appointees." *Espinosa*, 73 P.3d at 204.

In sum, we hold there is no genuine issue of material fact as to whether Smith's termination violated his rights under the Due Process and Takings Clauses.

In addition, Governor Martinez is entitled to qualified immunity on the Due Process and Takings claims. New Mexico law has not clearly established that a gubernatorial appointee has a property right to his office simply because a statute defines a term of years. In fact, it has suggested the opposite. *Anaya*, 698 P.2d at 885 ("[N]othing in the U.S. Constitution, statutes, regulations, judicial opinions or custom relating to 'political apparatus' contains any clear statement that the petitioners have or that gubernatorial appointees to boards and commissions have any property interest in their appointment. Moreover, the Legislature is silent on this as to property interest.").

### D. Breach of Contract Claim

Lastly, Smith argues that New Mexico breached an employment contract when Governor Martinez removed him before the five-year term ended. He makes the same argument we have already rejected: that § 52–5–2(A) entitled him to continued employment. We deny this claim for the reasons described above. We also note that the Supreme Court has explicitly held that a statute is presumed not to "tender[] a contract to a citizen" where it merely "fix[es] the term or tenure of a public officer or an employe [sic] of a state agency." *Dodge v. Bd. of Educ.*, 302 U.S. 74, 78–79 (1937).

## III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Governor Martinez and the State of New Mexico.

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge