**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM TRUJILLO; RONALD J.
CRUZ,

      Plaintiffs-Appellants,

v.

HUERFANO COUNTY BOARD OF
COUNTY COMMISSIONERS;
ROGER A. CAIN, in his individual
capacity,

      Defendants-Appellees.

No. 08-1486

(D.C. No. 07-cv-00474-WDM-KLM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, TYMKOVICH**, and **HOLMES**, Circuit Judges.

---

      Plaintiffs-Appellants William Trujillo and Ronald L. Cruz ("plaintiffs")

appeal the district court's grant of summary judgment to Defendants-Appellees

Huerfano County Board of County Commissioners and Roger A. Cain ("Board"

and "Cain" respectively) on plaintiffs' claims for (1) violations of their First

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Amendment right to political association; (2) race discrimination in violation of 42 U.S.C. §§ 1981 and 1983; (3) race discrimination in violation of Title VII; (4) race discrimination in violation of the Equal Protection Clause and 42 U.S.C. § 1983; and (5) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").

We have jurisdiction over plaintiffs' timely appeal pursuant to 28 U.S.C. § 1291 and affirm.

I

Until March 2005, plaintiffs were employed as foremen of the Huerfano County, Colorado Road and Bridge Department ("Department"). At that time, the Department was divided into three districts: Walsenburg, La Veta, and Gardner, with each foreman in charge of his respective district. Trujillo was the foreman of the Gardner district, Cruz was the foreman of the La Veta district, and William Brunelli was the foreman of the Walsenberg district. Both Trujillo and Cruz are Hispanic, and Brunelli is described in the record as a "white male." App., Vol. II, at 385.

In the fall of 2004, Trujillo ran in the Gardner district's Democratic primary for County Commissioner. He eventually lost the primary to Steven Wachterman. Plaintiffs publicly supported Wachterman's race against the Republican candidate, Roger Cain. In November, Cain won the general election and took office in January 2005. The other commissioners in January 2005 were

2

Scott King and Oress DeHerrera.  King, a Democrat, replaced the outgoing commissioner, Montoya, in the 2004 election.  DeHerrera, an Hispanic and Democratic incumbent, remained in office as he was not up for reelection.  Thus, in January 2005 the Board was comprised of two Democrats (King and DeHerrera) and one Republican (Cain).

After the new commissioners were elected, DeHerrera expressed his view to Cain and King that the Department should be reorganized from three districts into a unified system with a single supervisor.  Cain and King also received a recommendation from County Technical Services, Inc. ("CTSI"), a non-profit organization, that a single county-wide supervisor position would be more efficient.  In February, Cain approached Brunelli and asked him whether he would be interested in the new position of County Road Supervisor if the Board implemented a reorganization of the Department.

In March 2005, Cain introduced a motion before the Board to reorganize the Department.  The proposed reorganization eliminated the three foreman positions and created a Road Supervisor position that would oversee the entire county.  Additionally, the motion proposed reassignment of plaintiffs to operator positions and appointment of Brunelli as the new Road Supervisor.  In the motion, two new "Operator/Shop Manager" positions were proposed for the Gardner and La Veta districts to serve under Brunelli's supervision.  DeHerrera seconded the motion and it passed unanimously.

3

According to the commissioners, they selected Brunelli because he was the foreman of the largest district as well as a twenty-year employee of the Department. They also relied on the recommendations of the two outgoing commissioners and DeHerrera.

The Board allowed Brunelli to choose the Operator/Shop Managers who would work under him. Plaintiffs applied for the positions, but Brunelli chose Jerry Sporcich and Nick Archuleta (an Hispanic twenty-year employee of the Department) because he could work well with them. Both Sporcich and Archuleta were registered Democrats, but they voted for Cain in the 2004 election. Brunelli testified that he did not consider the plaintiffs for the positions because Trujillo and Cruz often disagreed with him when they were foremen. The Board ratified Brunelli's selection of Sporcich and Archuleta the following week. Due to the reorganization, Trujillo and Cruz's salaries were reduced from $38,050.99 to $30,196; Brunelli, Sporcich, and Archuleta, on the other hand, received salary increases.

On June 3, 2005, Brunelli and other employees observed Trujillo closing his eyes during a safety training session, and Brunelli believed that he was sleeping. Trujillo admitted that he closed his eyes and that he "dozed off," but he denied that he fell asleep. Brunelli then issued Trujillo a written reprimand for sleeping during the safety training session.

On July 8, 2005, Trujillo was involved in a near accident at work. After

4

stopping at an intersection, Trujillo pulled out in front of a county vehicle driven by Jason Santisteven, who had the right of way. Santisteven slammed on his brakes, leaving large skid marks on the road. Trujillo claimed that it was a blind intersection and that he did not see Santisteven. Santisteven reported the incident to Brunelli, who issued a written reprimand to Trujillo and suspended him without pay for three days.

On July 11, while Trujillo was driving a dump truck, he pulled down a low-hanging power line. Sporcich arrived shortly thereafter and saw Trujillo attempting to pull the power line off of his truck. The Colorado State Patrol cited Trujillo for careless driving as a result of his hitting the power line.

On July 18, Brunelli fired Trujillo. The notice of termination cited the near accident with Santisteven, the accident with the power line, and his sleeping during safety training. At the same time, Trujillo received the written reprimands for the accident and the near accident. Trujillo did not appeal his termination or any other disciplinary action to the Board. At the time of his termination, Trujillo was 54 years old.

Cruz continued to work as an operator from the time of the reorganization in March 2005 until his early retirement in October 2006. He claims that he was constructively discharged based on the "papering" of his personnel file.

Shortly after the reorganization, Brunelli announced that Sporcich would be the Operator/Shop Manager for La Veta. Cruz became upset and stated that

5

Sporcich "has been suckin[g] [Brunelli's] dick long enough to finally get this job." App., Vol. II, at 503–05. He also used other obscenities and called another employee a "lazy bastard." Id. Brunelli and two witnesses wrote their accounts of this incident, which were then placed in Cruz's personnel file.

In June 2005, Brunelli had a meeting with Cruz about his attitude and behavior. Specifically, Brunelli addressed allegations of Cruz leaving his truck door open and spilling fuel, and Brunelli asked Cruz whether he had sent a citizen to attend commissioners' meetings to complain about the road conditions. Cruz told him that Brunelli, Sporcich, and the Commissioners were "picking on him" and that he "was going to talk to his lawyer about harassment." Id. at 506. A notation of the meeting was placed in Cruz's personnel file. The next month, after Cruz called Brunelli a "chicken shit," Cruz received a written reprimand for insubordination and was suspended without pay for three days.

In December 2005, Cruz received a written reprimand for taking time off without following the proper procedure. Cruz appealed the reprimand, and the Board rescinded it, deciding it was not warranted.

In May 2006, Brunelli received written complaints from Department employees regarding Cruz's attitude and behavior, such as the condition of his work area, and leaving doors open and lights on. A note was added to his personnel file, but no disciplinary action followed.

During his last year of employment with the Department, Cruz claims he

6

was required to work over two hours away from home. He also claims that when compared to most of his prior work experience in the Department, he was now given less desirable work assignments, such as working dusty roads in July and August and with older equipment. In October, 2006, Cruz retired. Cruz contends that he would have continued working, but his early retirement amounted to a constructive discharge. When he retired, Cruz was 65 years old.

On March 23, 2006, plaintiffs filed charges of discrimination with the EEOC. Upon exhausting their administrative remedies, they filed a complaint alleging: (1) retaliation for engaging in protected political speech in violation of the First Amendment; (2) race discrimination against both defendants pursuant to 42 U.S.C. §§ 1981 and 1983; (3) race discrimination against the County pursuant to Title VII; (4) violation of equal protection against both defendants pursuant to 42 U.S.C. § 1983; and (5) age discrimination against the County in violation of the ADEA.

Defendants filed for summary judgment on all claims and subsequently filed a motion to strike exhibits submitted in response to defendants' motion for summary judgment. The district court granted the defendants' motion for summary judgment and denied the motion to strike as moot.

II

"We review the grant of summary judgment de novo, applying the same standard as the district court." Brammer-Hoelter v. Twin Peaks Charter Acad.,

7

492 F.3d 1192, 1201 (10th Cir. 2007). Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the record and make all reasonable inferences in the light most favorable to the non-moving party. MacKenzie v. City & County of Denver, 414 F.3d 1266, 1273 (10th Cir. 2005). In a First Amendment case, we have an "obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Burns v. Bd. of County Comm'rs, 330 F.3d 1275, 1281 (10th Cir. 2003) (internal quotation omitted).

*A. First Amendment*

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." Mason v. Okla. Tpk. Auth., 115 F.3d 1442, 1451 (10th Cir. 1997). In cases of discrimination based on political association, we apply the test as developed in Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980). See Jantzen v. Hawkins, 188 F.3d 1247, 1251 (10th Cir. 1999). Under the Elrod/Branti framework, there is a two-part inquiry. "To survive summary judgment, an employee needs to show a genuine dispute of fact that (1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors in his demotion, and (2) his position did not require political allegiance." Poindexter v.

8

Bd. of County Comm'rs, 548 F.3d 916, 919 (10th Cir. 2008) (internal quotation omitted).

On a claim of free speech retaliation by a government employer, we apply the test set forth in Pickering v. Board of Education, 391 U.S. 563 (1968), as modified by the Supreme Court in Garcetti v. Ceballos, 547 U.S. 410 (2006). Dixon v. Kirkpatrick, 553 F.3d 1294, 1301–02 (10th Cir. 2009). The Pickering/Garcetti analysis employs a five-part balancing test. The factors in this balancing test are:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Id. at 1302. This is a separate, though related, inquiry from the inquiry employed when addressing a government employee's right to freedom of association. See O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 719 (1996).

Here, plaintiffs argue that defendants violated their right to political association, and thus the district court incorrectly applied the Pickering/Garcetti

9

free speech test instead of the Elrod/Branti political association analysis.[1]  We

agree.  See Jantzen, 188 F.3d at 1251 (discussing when the Pickering/Garcetti and

Elrod/Branti tests apply).  Although the district court incorrectly used the free

speech analysis, this court can affirm "on any ground adequately supported by the

record so long as the parties have had a fair opportunity to address that ground."

Thomas v. City of Blanchard, 548 F.3d 1317, 1327 n.2 (10th Cir. 2008).  The

critical issue in this case is the same under either Elrod/Branti or

Pickering/Garcetti: whether the protected activity was a motivating or substantial

factor in any employment action.  Additionally, the parties have briefed this issue

under the Elrod/Branti line of cases.  Thus, we will examine if there is a genuine

issue of material fact on this prong of the Elrod/Branti test.

There is no direct evidence in the record suggesting that plaintiffs' political

association was a motivating or substantial factor of any employment decision

made by the defendants.  The only circumstantial evidence in the record is that

plaintiffs were Democrats; Trujillo ran in the Democratic primary for the County

Board of Commissioners; plaintiffs publicly supported the eventual Democratic

candidate; and within one month of the new Board members taking office, the

---

[1] Defendants claim that the plaintiffs waived their argument that the Elrod/Branti framework should apply.  To the contrary, plaintiffs clearly argued to the district court that their First Amendment rights were violated by retaliation for their political affiliation, under the Elrod/Branti line of cases.  See App., Vol. I, at 199–202.

10

Board was considering a reorganization of the Department.

Plaintiffs contend that Cain is individually responsible for the reorganization because he controlled or dominated the Board, and Cain retaliated against the plaintiffs for being Democrats and for supporting his Democratic opponent in the election. But there is no evidence to support that claim. Instead, plaintiffs have offered opinions and beliefs based on the following facts: Cain was often quoted in the newspaper, Cain introduced the motion to reorganize the Department at the Board meeting, and Cain made the reorganization announcement to the Department. To rely on such testimony to conclude that Cain had any special influence on the Board would be speculation. "Testimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 876 (10th Cir. 2004). Thus, there is no evidence upon which a reasonable factfinder could conclude that Cain had any special control of the Board, or was otherwise individually responsible for the Board's decisions. Therefore, Cain is entitled to summary judgment.

Likewise, there is no direct evidence to support plaintiffs' claim that the Board retaliated against plaintiffs for their political association. The only evidence in this case that is potentially relevant to causation is temporal proximity. While general proximity may be probative, it is insufficient alone to establish that a prior protected activity was a substantial or motivating factor in an employment

decision.  Maestas v. Segura, 416 F.3d 1182, 1189 (10th Cir. 2005).  An

employer's knowledge of the protected activity combined with "close temporal

proximity" between the protected activity and the adverse action may be sufficient

to survive summary judgment.  Id.  But other evidence, such as a long delay or

intervening events, may undermine an inference of causal connection.  Id.

Plaintiffs argue that the district court's error in applying Pickering/Garcetti

incorrectly focused the court's attention on the temporal proximity between the

election activity in the fall of 2004 and the reorganization in February of 2005.

Plaintiffs contend that they were retaliated against for being Democrats, and their

political affiliation did not cease in November 2004; therefore, they argue that the

focus should be on the one month time-span between when the new Board

members took office and the reorganization.[2]

We have never held that temporal proximity between an individual taking

---

[2] Additionally, plaintiffs assert that the temporal proximity analysis should focus on the point in time when a candidate takes office, citing Jantzen v. Hawkins, 188 F.3d 1247 (10th Cir. 1997) and Laidley v. McClain, 914 F.2d 1386, (10th Cir. 1990), overruled on other grounds by Shalala v. Schaefer, 509 U.S. 292, 302–03 (1993).  But those cases do not stand for that proposition.  In Jantzen, we did not focus on the point in time when the defendant took office because the defendant in that case was the incumbent.  See 188 F.3d at 1250.  In Laidley, the plaintiff was fired after the incumbent district attorney she supported was defeated.  But in that case, there was evidence that the defendant's justification for terminating the plaintiff was merely pretextual, and several other employees who had worked for the incumbent were fired and replaced with the defendant's supporters.  See 914 F.2d at 1394.  Nowhere in our legal analysis did we mention the role of temporal proximity.

12

office and an employment action is alone sufficient to create a genuine issue as to whether political affiliation was a substantial factor, and we decline to reach such a conclusion based on the facts in this case. As discussed above, there is no evidence to support the allegation that the sole Republican, Cain, had any special control or influence over the Board. Rather, the undisputed evidence reflects that a Democrat member of the Board, DeHerrera, and a non-profit organization, CTSI, proposed to a majority-Democrat Board a reorganization that resulted in the reassignment of two Democrats, the plaintiffs. These facts do not give rise to a reasonable inference of a retaliatory causal link between plaintiffs' political affiliation as Democrats and any adverse employment action taken against them.

Thus, plaintiffs' only evidence of discrimination based on political association is the three-month time-span between plaintiffs' campaign activity in November 2004 and the Board's consideration of the Department's reorganization in February 2005.[3] But a three-month period, by itself, is insufficient to establish causation between a protected activity and the alleged retaliation. See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (discussing retaliation under Fair Labor Standards Act). Therefore, there is no evidence supporting plaintiffs'

---

[3] Plaintiffs contend that Cain attempted to remove Trujillo in December 2004, but those allegations have no factual support. Instead, plaintiffs rely on the speculation of former Commissioner Montoya. But during his deposition, when he was asked what facts supported his conclusion, Montoya responded: "I have no facts." App., Vol. I, at 169. Again, "[t]estimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." Bones, 366 F.3d at 876.

13

claim that their political association was a substantial or motivating factor in the decision to reorganize the Department. Nor is there evidence that political association played a role in any other employment action. We affirm the judgment of the district court on plaintiffs' claims of discrimination in violation of the First Amendment.

*B. Age/Race Discrimination:*

Plaintiffs claim race discrimination in violation of §§ 1981 and 1983, and Title VII, and age discrimination in violation of the ADEA.[4] As an initial matter, we will examine who can be liable for the alleged acts of employment discrimination.

As discussed above, there is no evidence in the record to support an inference that Cain is individually responsible for any employment action, or that he controlled the Board. Likewise, there is no evidence that Cain instructed or controlled any of Brunelli's personnel decisions. Therefore, plaintiffs' claims against Cain in his individual capacity fail as a matter of law, and thus, it is unnecessary to determine whether he is entitled to qualified immunity. See United States ex rel. Burlbaw v. Orenduffu, 548 F.3d 931, 940 (10th Cir. 2008).

Turning to the County, defendants cite Monell v. Department of Social

---

[4] The Title VII and ADEA claims required plaintiffs to file an administrative claim within 300 of an alleged discriminatory action. See Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1222 (10th Cir. 2006). Thus, they cannot claim relief for particular adverse actions that occurred before May 27, 2005.

14

Services, 436 U.S. 658 (1978), to argue that the County cannot be liable under §

1983 for Brunelli's actions. Under § 1983, a county is liable only for acts that

represent official policy, which includes decisions made by "final policymakers."

Milligan-Hitt v. Bd. of Trustees, 523 F.3d 1219, 1223 (10th Cir. 2008). But the

district court did not reach the question of whether Brunelli was a "final

policymaker" under Monell, and instead found that plaintiffs did not provide

evidence of pretext. Even if we were to decide whether Brunelli was a "final

policymaker" so as to give rise to § 1983 liability, the County is an employer for

Title VII purposes, and therefore, we would still have to decide whether plaintiffs

were subjected to employment discrimination in violation of Title VII. See Randle

v. City of Aurora, 69 F.3d 441, 450–51 (10th Cir. 1995). Thus, we will examine

whether summary judgment was appropriately granted for the County for the age

and race discrimination claims.

Plaintiffs have presented no direct evidence of age or race discrimination,

but they have relied on circumstantial evidence. When a plaintiff relies on

circumstantial evidence to demonstrate employment discrimination at summary

judgment, we apply the burden-shifting framework set forth in McDonnell Douglas

Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas framework applies

to all of plaintiffs' race and age discrimination claims. See Garrett v. Hewlett-

Packard Co., 305 F.3d 1210, 1216 (10th Cir. 2002) (applying McDonnell Douglas

to Title VII and ADEA); Baca v. Sklar, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)

15

(recognizing McDonnell Douglas applies in §§ 1981 and 1983 and Title VII cases).

Under McDonnell Douglas, a plaintiff must first establish a prima facie case of employment discrimination. Garrett, 305 F.3d at 1216. If the plaintiff satisfies the prima facie requirement, then the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for their action. Id. Then, the plaintiff must offer evidence to show that race or age was a determinative factor in the employment decision or that the defendant's non-discriminatory reason was merely pretext. Id.

In order to establish a genuine issue of material fact as to pretext, a plaintiff must produce evidence that defendants' non-discriminatory reason is "unworthy of belief." Randle, 69 F.3d at 451. A plaintiff can meet this burden with "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Argo v. Blue Cross and Blue Shield of Kan., Inc., 452 F.3d 1193, 1203 (10th Cir. 2006) (quotation omitted). In determining whether plaintiffs have shown pretext, "we are obliged to consider their evidence in its totality." Orr v. City of Albuquerque, 531 F.3d 1210, 1215 (10th Cir. 2008) (discussing McDonnell Douglas in summary judgment under the Pregnancy Discrimination Act of Title VII).

We will turn to the plaintiffs' claims of unlawful discrimination and apply

16

the McDonnell Douglas framework to each action.

**1. Reorganization**

Both plaintiffs claim they suffered discrimination based on the reorganization of the Department, which includes plaintiffs' reassignment from foremen to operators, the failure to hire plaintiffs as Road Supervisor, and the failure to hire plaintiffs as Operator/Shop Managers. Whether plaintiffs established a prima facie case is not presented as an issue on appeal.[5] We need address only the second and third parts of the McDonnell Douglas framework.

Defendants justified their decision to reorganize the Department and reassign plaintiffs as operators based on their belief that the reorganization would be more efficient. The undisputed evidence is that DeHerrera suggested the reorganization to the newly elected members, and the new members learned about the efficiency of a single, county-wide plan from CTSI, an independent non-profit organization.

To support pretext, plaintiffs have offered the testimony of former Commissioner Montoya that the County previously had an organizational structure similar to the one adopted in March 2005. But the organizational history of the Department does not support an inference that defendants' justification for the

---

[5] The district court noted that "Defendants generally concede for the purpose of summary judgment that Plaintiffs may be able to establish a prima facie case of race and/or age discrimination." App. at 609. Defendants have not cross-appealed this conclusion, and therefore, it is not an issue on appeal. See Montgomery v. City of Ardmore, 365 F.3d 926, 944 (10th Cir. 2004).

17

2005 reorganization was pretextual. "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." Rivera v. City and County of Denver, 365 F.3d 912, 924–25 (10th Cir. 2004) (quotation and brackets omitted). There is no evidence to counter the Board's testimony that they honestly believed the reorganization was a good idea because it would improve the Department's efficiency. Indeed, there is no evidence to suggest that defendants even knew of any prior Department organizational structure. Nor is there any other evidence in the record to suggest that the justification for the reorganization was pretextual.

Plaintiffs also claim that the selection of Brunelli as Road Supervisor instead of either plaintiff was unlawful discrimination. Defendants offered the non-discriminatory reason that they selected Brunelli based on his qualifications.

There is no evidence suggesting that the defendants' justification for selecting Brunelli was pretextual. Although the parties disagree over who recommended Brunelli for the position, this discrepancy does not support an inference that the reasons given to support the selection of Brunelli were pretextual. When selected, Brunelli was the foreman of the largest district in the county, and a twenty-year employee. "When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, it is within the employer's discretion to choose among

18

them so long as the decision is not based on unlawful criteria." Simms v.

Oklahoma, 165 F.3d 1321, 1330 (10th Cir. 1999) (quotation omitted). There is no

evidence to suggest that plaintiffs were clearly better qualified than Brunelli for

the position of Road Supervisor, or that the decision was based on any unlawful

criteria. "Our role is to prevent unlawful [employment] practices, not to act as a

super personnel department that second guesses employers' business judgments."

Id. (quotation omitted).

Next, we turn to the decision to hire Sporcich and Archuleta as

Operator/Shop Manager instead of Trujillo or Cruz. Defendants offered the non-

discriminatory reasons that Sporcich and Archuleta met the job qualifications and

worked well with Brunelli, who would be their immediate supervisor. Standing in

stark contrast is undisputed evidence that prior to the reorganization, plaintiffs

often disagreed with Brunelli. There is no evidence to suggest that hiring

employees because they work well with others, including the employees' soon-to-

be supervisor, is an unjustified consideration. Indeed, this court has previously

recognized that an employee's ability to work well with others, particularly with

management, is a legitimate, non-discriminatory qualification. See Fye v. Okla.

Corp. Comm'n, 516 F.3d 1217, 1228 (10th Cir. 2008).

Additionally, plaintiffs argue that discrimination can be inferred because

Brunelli exhibited racial hostility. In support of this claim, plaintiffs have pointed

to two facts: Brunelli would not attend safety training classes if plaintiffs were

19

attending, and Brunelli ate separately from plaintiffs.  These assertions by themselves are not evidence that would allow a reasonable jury to conclude that Brunelli exhibited any racial hostility.

Thus, plaintiffs have not met their burden of providing evidence of pretext regarding the Department reorganization plan which would withstand defendants' motion for summary judgment.

## 2. Trujillo's Termination

Trujillo claims that his ultimate, involuntary termination was discriminatory.  Whether Trujillo established a prima facie case is not presented as an issue on appeal, so we again turn to the second and third parts of the McDonnell Douglas framework.

Brunelli based Trujillo's termination on a series of three safety violations in the course of approximately one month: (1) sleeping during a safety training session; (2) the near accident with Santisteven; and (3) the accident with the power line.  In his proffer of evidence to support pretext, Trujillo claims that these violations were "minor, trumped-up infractions," and he alleges that other similarly situated employees were not disciplined as severely.[6]  Appellants' Br. at

---

[6] Plaintiffs assert on appeal that Brunelli's behavior and temper during a deposition is relevant to the discrimination charges.  Appellants' Br. at 59.  As plaintiffs did not argue this before the district court, it will not be considered on appeal.  We review de novo "from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties."  Adler v. Wal-Mart

(continued...)

20

62. The evidence in the record fails to support either of these allegations.

First, the record does not support Trujillo's claim that his three safety violations were "minor, trumped-up infractions." The underlying facts of these three incidents involving Trujillo are undisputed. "[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate plaintiff." Kendrick, 220 F.3d at 1231. The facts as they appeared to Brunelli were that Trujillo was sleeping during safety training, and that three days after a near accident, Trujillo was involved in an actual accident involving County property. Thus, there is no evidence in the record to show that Trujillo's discipline was somehow in response to "minor, trumped-up infractions."

Second, Trujillo has failed to offer evidence that he was subjected to disparate treatment. In order to show pretext in the form of disparate treatment, Trujillo must provide "evidence that he was treated differently from other similarly situated, nonprotected employees who violated work rules of comparable seriousness." Id. at 1232.

Trujillo offered evidence that other Department employees were involved in accidents and were disciplined less severely than Trujillo. But Trujillo did not provide evidence that these other accidents involved similarly situated, non-protected employees. Critically, Trujillo has failed to identify the age or race of

---

[6](...continued)
Stores, Inc., 144 F.3d, 664, 671 (10th Cir. 1998).

21

any other Department employee besides Brunelli (white) and Archuleta (Hispanic, age 49). As the district court noted, Trujillo refers to accidents involving employees who "have Hispanic surnames, which indicates that they are in the same protected class as Plaintiffs." App., Vol. II, at 612.

Moreover, employees are "similarly situated" only if they deal "with the same supervisor and [are] subject to the same standards governing performance evaluation and discipline." Kendrick, 220 F.3d at 1232 (quotation omitted). But Trujillo failed to identify who supervises these employees. As such, Trujillo has provided this court with no evidence of similarly situated, non-protected employees.

Further, Trujillo failed to offer evidence of violations of comparable seriousness. Trujillo pointed to other employees who were in accidents and received no discipline, but these all involved incidents where an employee had a single accident. These other incidents do not support Trujillo's claim of disparate treatment because there is no evidence to suggest that defendants considered any of these single accidents to be as serious as multiple safety violations, two of which occurred within a few days of each other. See Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1120–21 (10th Cir. 2007). Therefore, there is no evidence that defendants' justification for terminating Trujillo was pretextual, and his claim that his termination was discriminatory cannot survive summary judgment.

**3. Hostile Work Environment**

Both plaintiffs argue that the discipline they each received created a hostile work environment.[7] For a hostile work environment claim to withstand summary judgment, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Sandoval v. City of Boulder, 388 F.3d 1312, 1326–27 (10th Cir. 2004) (quotation omitted). Additionally, plaintiffs must produce evidence that they were targeted for harassment because of race. Id. at 1327.

Upon our review of the record, we find no evidence of intimidation, ridicule, or insult against either plaintiff. Nor is there any evidence that plaintiffs were targeted for harassment because of race. Therefore, defendants are entitled to summary judgment on the claim of hostile work environment.

**4. Cruz's Alleged Constructive Discharge**

Lastly, Cruz has claimed that his employment ended as a result of constructive discharge. As we explained in Sanchez v. Denver Public Schools:

> Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to

---

[7] In the reply brief, Cruz asserts that each act of discipline against him was an adverse employment action. But in their opening brief, plaintiffs failed to dispute the district court's conclusion that Cruz's reprimands were not adverse employment actions, and therefore, that argument is waived. See Adler, 144 F.3d at 679 ("Arguments inadequately briefed in the opening brief are waived.").

resign. Essentially, a plaintiff must show that she had <u>no other choice</u> but to quit. The conditions of employment must be objectively intolerable; the plaintiff's subjective views of the situation are irrelevant.

164 F.3d 527, 534 (10th Cir. 1998) (quotation omitted). "In contrast, a plaintiff who voluntarily resigns cannot claim that he or she was constructively discharged." <u>Exum v. U.S. Olympic Comm.</u>, 389 F.3d 1130, 1135 (10th Cir. 2004). The plaintiff's burden in a constructive discharge case is substantial. <u>EEOC v. PVNF, LLC</u>, 487 F.3d 790, 805 (10th Cir. 2007). To support his claim of constructive discharge, Cruz alleges that he was required to travel long distances to work and received at most two unwarranted notations in his personnel file.

Cruz argues that his working conditions were similar to those set forth in <u>Strickland v. United Parcel Service, Inc.</u>, 555 F.3d 1224 (10th Cir. 2009). In <u>Strickland</u>, the plaintiff had provided evidence that she believed her job was in jeopardy, her meetings with supervisors interfered with her work, she requested support and did not receive it, and she was required to make written commitments which she saw as an attempt to set her up to fail. <u>Id.</u> at 1229. But here, Cruz has offered no evidence to suggest that the defendants were similarly setting Cruz up to fail or that his job was likewise in jeopardy. <u>Strickland</u> is clearly distinguishable.

Cruz has not proffered any evidence which would support a claim that due

24

to defendants' alleged discriminatory acts, Cruz's working conditions were so objectively intolerable that a reasonable employee would feel compelled to resign. Therefore, we agree with the district court that there is no genuine issue of material fact regarding constructive discharge, and defendants are entitled to summary judgment.

III

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge