**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SABRINA TICE,

     Plaintiff - Appellee,

v.

CHARLIE DOUGHERTY,

     Defendant - Appellant,

and

BOARD OF COUNTY
COMMISSIONERS OF LINCOLN
COUNTY,

     Defendant.

No. 20-6062
(D.C. No. 5:18-CV-00974-R)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

Plaintiff Sabrina Tice began working for the Lincoln County, Oklahoma

Sheriff's Department as a full-time deputy in 2012. At the time, and throughout the

pendency of this case, Defendant Charlie Dougherty was the elected Sheriff.

Plaintiff's husband, John Tice, also worked as a deputy with the Sheriff's

Department. In 2015, Mr. Tice was indicted on criminal charges related to an alleged

---

[*] This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

excessive use of force. Given the charges, the Sheriff's Department terminated Mr. Tice's employment. Plaintiff was unhappy about the termination decision and allegedly yelled at Defendant to express her disagreement, but Plaintiff was not disciplined for the outburst. In September 2015, Plaintiff filed a complaint against Captain Jack Johnson for making derogatory remarks about her husband. On the same day, Plaintiff surreptitiously recorded a conversation with Captain Johnson. Plaintiff also recorded conversations with several other officers. Although Plaintiff's direct supervisor was aware of her behavior, Plaintiff was not disciplined.

The charges against Mr. Tice were subsequently dismissed, and in April 2016, Mr. Tice declared his candidacy for sheriff in the upcoming election. Plaintiff openly supported her husband's campaign. While Plaintiff concedes that Defendant treated her well during the election, she contends that the undersheriff, Tim Donaldson, acted hostilely toward her because she supported her husband's candidacy. Defendant won reelection, and the next day, he terminated Plaintiff's employment.

After her termination, Plaintiff filed this § 1983 action in the Western District of Oklahoma. As relevant here, Plaintiff alleges that Defendant violated her First Amendment right to association because he fired her for supporting her husband's candidacy for Lincoln County Sheriff. Defendant sought qualified immunity claiming that he did not violate Plaintiff's First Amendment right to association and that, even if he did, the contours of the right were not clearly established. The district court denied Defendant's motion. The court held that a reasonable jury could find (1) Defendant fired Plaintiff because of her political association, and (2) he

2

would not have made the same termination decision absent Plaintiff's protected First Amendment activity. The court also held that Plaintiff's First Amendment right to political association was clearly established in November 2016, when her employment was terminated.

This interlocutory appeal followed. Defendant argues the district court erred in denying him qualified immunity. Specifically, he argues the court wrongly concluded that a genuine issue of material fact exists as to whether he violated Plaintiff's First Amendment right. Defendant also contends that, even if he violated Plaintiff's First Amendment association right, the contours of that right were not clearly established in November 2016, when the termination decision was made. Because both arguments are unavailing, the district court properly denied qualified immunity. Thus, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

\* \* \*

Before reaching the merits of the appeal, we pause to note our jurisdictional limitations. In an interlocutory appeal challenging the denial of qualified immunity, this court's jurisdiction is limited to abstract questions of law. *Henderson v. Glanz*, 813 F.3d 938, 947 (10th Cir. 2015). Thus, we may review: "(1) whether the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, or (2) whether that law was clearly established at the time of the alleged violation." *Id.* at 948 (quotation marks omitted). We therefore have "jurisdiction over appeals challenging the denial of a qualified-immunity-based motion for summary judgment only if a defendant-appellant does not dispute the facts a district

3

court determines a reasonable juror could find but, instead, 'raises only legal challenges to the denial of qualified immunity based on those facts.'" *Ralston v. Cannon*, 884 F.3d 1060, 1067 (10th Cir. 2018) (quoting *Henderson*, 813 F.3d at 948).

Defendant recognizes this jurisdictional limitation. *See* Appellant's Br. at 2–4. And while Plaintiff contends Defendant challenges the district court's factual findings, the thrust of Defendant's argument is that, even accepting the district court's factual findings as true, no reasonable juror could conclude he violated Plaintiff's First Amendment rights. We have jurisdiction to address this legal question. We likewise have jurisdiction to consider whether Plaintiff's asserted right was clearly established at the relevant time.

\* \* \*

We review the district court's denial of summary judgment on qualified immunity grounds de novo. *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). When a defendant asserts a qualified-immunity defense, the plaintiff must show that: (1) the defendant violated a federal statutory or constitutional right; and (2) the right was clearly established at the time of the defendant's conduct. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). Defendant contends Plaintiff failed to establish either prong. We address each in turn.

**A. First Amendment Violation**

Under the first prong of qualified immunity, Plaintiff must demonstrate Defendant violated a federal statutory or constitutional right. *Id.* As relevant to this appeal, Plaintiff contends Defendant violated her First Amendment right to political

4

association. "The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Snyder v. City of Moab*, 354 F.3d 1179, 1184 (10th Cir. 2003). Accordingly, a public employee has a valid First Amendment claim if she is discharged for her support of a particular candidate unless the employer can show her position requires political allegiance. *Id.* at 1184–85.

In this case, Defendant does not suggest Plaintiff's employment required political allegiance. Therefore, Plaintiff must only show that her political affiliation was a "substantial" or "motivating" factor behind Defendant's termination decision. *Poindexter v. Bd. of Cnty. Comm'rs of Cnty. of Sequoyah*, 548 F.3d 916, 919 (10th Cir. 2008). If Plaintiff carries this burden, Defendant may avoid liability if he establishes by a preponderance of the evidence that he would have fired Plaintiff even in the absence of her protected conduct. *Walton v. Powell*, 821 F.3d 1204, 1211 (10th Cir. 2016).

The district court concluded that a reasonable juror could find (1) Plaintiff's political affiliation was a substantial factor in her termination, and (2) Defendant would not have fired Plaintiff absent the protected conduct. In doing so, the court relied largely on the fact that Defendant was well aware of Plaintiff's political activities and fired her just one day after he won reelection. The court also found that Plaintiff was fired in part because of the recommendation of undersheriff Tim Donaldson, who had harassed Plaintiff for supporting her husband's campaign. Defendant presented some evidence he would have fired Plaintiff anyway, but the

5

court determined the evidence was not sufficient to establish that "any reasonable jury" would conclude Defendant would have taken the adverse action in the absence of Plaintiff's support of her husband's campaign. From our de novo review, the district court did not err when it found Plaintiff carried her burden of showing Defendant violated her First Amendment right to political association.

An adverse employment action "in close proximity to protected speech[,]" plus the employer's knowledge of the protected conduct, may be sufficiently probative to show the employee's protected conduct was a substantial factor in the adverse employment decision. *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005). In this case, as the district court noted, Defendant fired Plaintiff *the day after* he won reelection. Defendant argues the temporal proximity should be measured from the day Mr. Tice announced his candidacy because Plaintiff supported her husband's campaign from the beginning. Using this measure, Defendant contends he didn't fire Plaintiff until more than six months after she engaged in protected conduct. And this gap, he argues, is "too long, standing alone, to establish a causal link."

Other record evidence undercuts Defendant's argument. Defendant testified, for example, that the only reason he didn't fire Plaintiff during the election was because it would look bad. Given Defendant's admission that he would have fired Plaintiff earlier if it wouldn't have adversely affected his campaign, there is a clear temporal proximity between Plaintiff's protected conduct—supporting her husband's campaign—and her termination. It's also undisputed that Defendant knew about Plaintiff's open support for Mr. Tice's candidacy. Thus, the temporal proximity

6

combined with Defendant's knowledge of Plaintiff's protected activity supports a reasonable inference that Plaintiff's political association was a substantial factor in her discharge.

But that's not all. Causation can also be shown where "the employer expressed opposition to the employee's speech . . . ." *Id.* Although Defendant treated Plaintiff well during the election, undersheriff Tim Donaldson acted hostilely toward her because of her political affiliation. For example, after Plaintiff participated in a parade for her husband's campaign, Donaldson texted Plaintiff a picture of herself in the parade with the caption: "No loyalty, shameful & embarrassing, guess you didn't abstain from campaigning after all." While Defendant knew about Donaldson's harassment, he still relied on Donaldson's recommendation in deciding to terminate Plaintiff's employment. Thus, Defendant may not have expressly opposed Plaintiff's political association, but he tacitly condoned Donaldson's opposition to and harassment of Plaintiff by relying on his recommendations to fire her.

Finally, Defendant correctly points out that there is evidence in the record to support the conclusion that he would have fired Plaintiff even if she hadn't campaigned on behalf of her husband. That evidence, however, is not sufficient to command the conclusion that Defendant would have taken the adverse action absent Plaintiff's protected conduct. Although Plaintiff allegedly engaged in some unbecoming behaviors, nothing was said to her in the eighteen-month period during which she engaged in the behaviors. Nor was she subject to any discipline prior to

7

her termination. It's tough to say Defendant would have fired Plaintiff anyway when he hadn't even disciplined her up to that point. Accordingly, Defendant failed to meet his burden of showing, by a preponderance of the evidence, that he would have fired Plaintiff regardless of her political association.

In sum, a reasonable jury could find that Plaintiff's political affiliation was a substantial or motivating factor in her termination and that Defendant would not have made the same decision absent the protected conduct.

### B. Clearly Established

Defendant nonetheless argues he is entitled to qualified immunity because, even if he did violate Plaintiff's First Amendment right to association, the contours of that right were not clearly established. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589. Though "a case directly on point" is not required, "existing precedent must have placed the statutory or constitutional question regarding the illegality of the defendant's conduct beyond debate." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.), *cert. denied sub nom. Cummings v. Bussey*, 140 S. Ct. 81 (2019). Ordinarily, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of

8

authority from other courts must have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (quotation marks omitted).

As relevant here, the First Amendment has long "protect[ed] public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1451 (10th Cir. 1997) (overruled on other grounds). This court has more than a few published cases explaining that an employer may be liable to an employee in a § 1983 action when the employer takes an adverse employment action based substantially on the employee's political affiliation. *See id.*; *Jantzen v. Hawkins*, 188 F.3d 1247 (10th Cir. 1999); *Dickeson v. Quarberg*, 844 F.2d 1435 (10th Cir. 1988); *Francia v. White*, 594 F.2d 778 (10th Cir. 1979). And this general rule has been applied specifically in cases where, like here, a sheriff's deputy is fired after campaigning for another candidate for sheriff. *See Jantzen*, 188 F.3d at 1259; *Francia*, 594 F.2d at 779. We therefore agree with the district court that the contours of Plaintiff's First Amendment right to political association were clearly established when she was terminated in November 2016.

Defendant's sole argument to the contrary is without merit. According to Defendant, the law is not clearly established because of a factual distinction between this case and *Jantzen*. In *Jantzen*, the sheriff explicitly told his employees that anyone who openly opposed his reelection would be fired, *see* 188 F.3d at 1250, whereas here, Defendant never directly told Plaintiff he terminated her employment because she supported her husband's campaign.

9

This distinction is of no moment for purposes of our clearly-established law analysis. If anything, the distinction may impact Plaintiff's ability to establish the constitutional violation, but it does not change whether the constitutional right itself is clearly established. That is, without the direct evidence that she was fired because of her political affiliation, Plaintiff may struggle to persuade a jury her political association was a substantial or motivating factor in her termination. But assuming she does convince the jury, Defendant is not shielded from liability merely because he more carefully hid his alleged motive for terminating Plaintiff's employment.

* * *

For the reasons provided herein, we agree with the district court that a reasonable jury could find Plaintiff's political association was a substantial or motivating factor in her termination, and that Defendant would not have made the same termination decision absent the protected conduct. We further conclude the contours of Plaintiff's First Amendment right to association were clearly established when she was terminated in 2016. We therefore affirm the judgment of the district court.

Entered for the Court

Bobby R. Baldock
Circuit Judge

10